UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KRISTIE  BUCKLEY formerly known as )
KRISTIE  SMOCK, )
 )
                          Plaintiff, )
 )     No. 1:14-cv-01275-TAB-WTL
                 vs. )
 )
AFNI, INC., )
 )
                          Defendant. )

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

**I.      Introduction**

Plaintiff Kristie Buckley filed suit against Defendant Afni, Inc. for allegedly violating the

Fair Credit Reporting Act and the Fair Debt Collection Practices Act.  Now before the Court are

the parties' cross motions for summary judgment.  Buckley claims summary judgment is

appropriate because there are no material facts in dispute that Afni attempted to collect a debt

that was discharged in bankruptcy by communicating with her directly.  Afni claims it had

reason to believe the debt was valid and that any such alleged violations were bona fide errors.[1]

As stated below, the Court grants partial summary judgment in favor of Buckley and partial

summary judgment in favor of Afni.

---

[1] Afni's response was filed one day late.  Afni should have filed a request to file a belated
response.  It did not.  Such untimeliness could have serious consequences.  *See e.g., Spears v.
City of Indianapolis,* 74 F.3d 153 (7th Cir. 1996) (affirming the decision to strike all materials in
opposition to summary judgment filed one day late).  However, the Court declines to strike
Afni's brief in this instance so that it may fully reach the merits of this case.

## II.    Background

On July 26, 2012, before Buckley filed for bankruptcy, Afni received a letter from Buckley's attorney, John Steinkamp, providing his address, phone number, and fax number, and stating that he was representing Buckley in obtaining debt relief.  This letter explained that Buckley's counsel was representing her "for all debts that s/he may have" and that Afni should "immediately terminate any further direct or indirect contacts" with Buckley.  [Filing No. 54, at ECF p. 46.]  The letter showed Buckley's name as "Kristy Ann Buckley (AKA: Smock & Doughty)," her address as 6158 Monteo Drive, Indianapolis, IN 46217, and provided the last four digits of her social security number.  [Filing No. 54, at ECF p. 46.]  The letter also stated that "any further direct or indirect contacts with our client will result in our office filing a claim against you."  [Filing No. 54, at ECF p. 46.]

Nearly one year later, on May 2, 2013, Buckley filed for Chapter 7 bankruptcy.  Afni was listed on Buckley's bankruptcy schedule as the creditor for three of Buckley's debts, namely collection accounts from AT&T Mobility, DIRECTV, and T-Mobile.  The DIRECTV collection account listed 2353 as the last four digits of her account number with a total debt of $324. [Filing No. 37-2 at ECF p. 4.]  Afni received electronic notice of Buckley's bankruptcy on May 6, 2013, which also showed that she was represented by Steinkamp and gave his address and phone number.  [Filing No. 37-3.]  The notice again showed Buckley's name as "Kristie Ann Buckley, aka Kristie Ann Doughty, aka Kristie Ann Smock," her address as 6158 Monteo Drive, Indianapolis, IN 46217, and provided the last four digits of her social security number.  [Filing No. 37-3.]  On August 19, 2013, Buckley received a discharge of her debts and Afni received notice the same day.  [Filing No. 54, at ECF p. 39-43.]  Afni updated each of Buckley's

collection accounts to reflect the bankruptcy, except for the DIRECTV account. [Filing No. 54, at ECF pp. 1, 5, 10, 26.]

About five months after the bankruptcy discharge, on January 22, 2014, Afni made an inquiry on Buckley's credit report. [Filing No. 37-1, at ECF p. 22; Filing No. 37-2, at ECF p. 11.] Afni obtained Buckley's credit report to score her account and determine a strategy in attempting to collect the DIRECTV account. [Filing No. 37-1, at ECF p. 22-23.] Afni then sent a collection letter to Buckley's home dated July 15, 2014, which stated "This is an attempt to collect a debt." [Filing No. 37-2, at ECF p. 10.] The letter was addressed to Kristie Smock at 6154 Monteo Dr, Indianapolis, IN 46217, and referenced her DIRECTV account ending in 2353. The letter was attempting to collect $100 to settle the balance of $323.92 on the DIRECTV debt which had been discharged in Buckley's bankruptcy. Buckley did not respond to Afni. Rather, she took the letter to her attorney and brought this suit under 15 U.S.C. § 1681b(f) of the FCRA and 15 U.S.C. §§ 1692c, 1692d, 1692e, and 1692f of the FDCPA.

## III.    Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and other admissible evidence, if any, show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219-20 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). The purpose of summary judgment is to navigate the pleadings and assess the proof in order to determine whether there is a need for trial. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 800 (7th Cir. 2015).

The moving party must identify the evidence that she believes demonstrates the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the moving party has met this threshold burden, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* In determining whether a genuine issue of material fact exists, the Court must construe all facts in the light most favorable to and draw all reasonable inferences in favor of the non-moving party. *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015). However, the nonmovant can only successfully oppose summary judgment by presenting competent evidence to rebut the motion. *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015). Ultimately, the Court must determine whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. *Burton v. Downey,* 805 F.3d 776, 783 (7th Cir. 2015).

**IV.     FCRA violation**

Buckley argues that Afni violated § 1681b of the FCRA when it obtained her credit report after her debt was discharged in bankruptcy because Afni no longer had a permissible purpose. Buckley argues there are no genuine issues of material fact and presents evidence to support her position. Afni counters that the evidence demonstrates it did have a permissible purpose. Both parties seek summary judgment.

A debt collector is prohibited from obtaining a credit report unless it is "for a purpose for which the [credit] report is authorized." 15 U.S.C. § 1681b(f)(1). Debt collection is a permissible purpose for obtaining a credit report. *Id.* at § 1681b(3)(A); *Miller v. Wolpoff & Abramson, LLP,* 309 F. App'x. 40, 43 (7th Cir. 2009); *Grant v. RJM Acquisitions Funding, LLC*, No. 11 C 8851, 2013 WL 3071249, at *1 (N.D. Ill. June 18, 2013). "A debt collector

permissibly obtains a consumer's credit report if the debt collector has 'reason to believe' that the consumer owes the debt." *Grant*, 2013 WL 3071249, at *1.

Both parties have moved for summary judgment on this issue, but even when viewing the evidence in a light most favorable to Afni, Buckley presents sufficient evidence to establish Afni's liability for the FCRA violation. The parties agree that Afni accessed Buckley's credit report after all her debts with it were discharged in bankruptcy, including the DIRECTV debt. In its deposition, Afni explained that after the bankruptcy discharged the DIRECTV account, it accessed Buckley's credit report to score it and determine a strategy to collect that account. [Filing No. 37-1, at ECF p. 22-23.] Thus, the evidence shows that Afni had no had no valid debt to collect when it accessed Buckley's credit report for the purpose of debt collection.

Despite this evidence, Afni argues that it had reason to believe the debt was valid when it accessed Buckley's credit report. Afni claims it was unaware Buckley's DIRECTV account was discharged in bankruptcy because her address on the DIRECTV account and her address on the bankruptcy notice were slightly different. Afni is correct that the bankruptcy notice shows Buckley's address as 6158 Monteo Drive and Afni's account information shows her address as 6154 Monteo Drive. However, this is not enough to suggest Afni had reason to believe the DIRECTV debt was still valid. Afni was aware that her AT&T and T-Mobile accounts were discharged under the same circumstances. [Filing No. 54, at ECF pp. 1, 5, 10.] Moreover, Buckley's name, social security number, and DIRECTV account number were also provided in the bankruptcy notice. These are identifiers Afni uses to locate accounts. [Filing No. 37-4, at ECF p. 9.] Therefore, Afni had enough information to connect Buckley's DIRECTV account with her bankruptcy, as it did with her other accounts. Not doing so was simply Afni's internal

failure.  Afni had no reason to believe the DIRECTV debt was valid when it obtained Buckley's

credit report.  The undisputed evidence establishes a FCRA violation.

Buckley seeks actual, statutory, and punitive damages, along with legal fees and costs for

the FCRA violation.  [Filing No. 1.]  With the violation established, the FCRA will hold Afni

liable for actual damages.  15 U.S.C. § 1681o(a)(1).  If Buckley can show that Afni willfully

failed to comply with the FCRA, Buckley can recover statutory and punitive damages.  15

U.S.C. § 1681n(a)(1)-(2); *Aleshire v. Harris, N.A.*, No. 08 C 7367, 2012 WL 698280, at *2 (N.D.

Ill. Mar. 1, 2012).  A prevailing plaintiff also may recover reasonable attorney's fees and costs.

15 U.S.C. §§ 1681o(a)(2), 1681n(a)(3); *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d

719, 725 (7th Cir. 2008).  To willfully violate the FCRA, a company must do so recklessly.

*Safeco Insurance Co. v. Burr,* 551 U.S. 47, 69 (2007); *Murray*, 523 F.3d at 726.  The standard

for recklessness is objective, meaning the defendant acted with "more than negligence but less

than knowledge of the law's requirements."  *Murray*, 523 F.3d at 726.  The Supreme Court has

explained that,

> a company subject to FCRA does not act in reckless disregard of it unless the action
> is not only a violation under a reasonable reading of the statute's terms, but shows
> that the company ran a risk of violating the law substantially greater than the risk
> associated with a reading that was merely careless.

*Safeco Insurance Co.*, 551 U.S. at 69.

Buckley argues that Afni accessed her credit report willfully because it was aware of the

FCRA requirements yet intentionally accessed her credit report.  Afni contends that it should not

be held liable because its internal failure to deactivate Buckley's DIRECTV account was merely

negligence and does not rise to the level of willfulness.

The parties agree that Afni accessed Buckley's credit report after she received her

bankruptcy discharge for purposes of debt collection.  It is undisputed that Afni accessed

6

Buckley's credit report with knowledge that doing so without a permissible purpose violates the FCRA. Based on the evidence, no rational trier of fact could reasonably find that Afni had reason to believe that Buckley's DIRECTV account was a valid debt to collect when it did so. Consequently, Afni had no permissible purpose to obtain Buckley's credit report. The parties do not dispute that Afni was aware of the FCRA rules or that it attempted to collect the discharged Deirectv debt. This violation was willfull and summary judgment in favor of Buckley is therefore appropriate on the FCRA claim.

## V.   FDCPA violations

Buckley also alleges Afni violated §§ 1692c, 1692d, 1692e, and 1692f of the FDCPA by directly sending her a collection letter on the discharged DIRECTV account. Afni contends that its collection letter was harmless and was sent directly to Buckley because Afni did not have actual notice that she was represented by counsel. Afni also argues its violation is excusable because the collection letter was sent as the result of a bona fide error, and so it is entitled to judgment in its favor.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA broadly prohibits: (1) unfair or unconscionable collection methods, (2) conduct which harasses, oppresses, or abuses any debtor, and (3) any false, deceptive, or misleading statements in connection with collection. *Id.* §§ 1692d-1692f.

To determine whether a debt collector's conduct violates the FDCPA, the Court must examine the conduct from the perspective of an unsophisticated consumer. *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1060 (7th Cir. 2000); *see also Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562, 564-66 (7th Cir. 2004) (reviewing FDCPA claims under the unsophisticated consumer standard). "While the unsophisticated [consumer] is considered

7

uninformed, naive, or trusting, he is nonetheless deemed to possess rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Durkin*, 406 F.3d at 414. The unsophisticated consumer standard is objective and requires more than mere confusion. *Id.* A plaintiff must show that the "language of the letters unacceptably increases the level of confusion." *Id.* at 415 (quoting *Johnson v. Revenue Mgmt. Corp.,* 169 F.3d 1057, 1060 (7th Cir. 1999)). A collection letter cannot be confusing as a matter of law or fact "unless a significant fraction of the population would be similarly misled." *Id.* at 415; *Pettit,* 211 F.3d at 1060.

When an FDCPA violation is "clearly" evident on the face of a collection letter, summary judgment for the plaintiff is appropriate. *Durkin*, 406 F.3d at 415; *Avila v. Rubin,* 84 F.3d 222, 226-27 (7th Cir. 1996). On the other hand, mere speculation that a collection letter confuses the unsophisticated consumer is not enough for an FDCPA plaintiff to survive a defendant's summary judgment motion. *Durkin*, 406 F.3d at 415; *Pettit,* 211 F.3d at 1061. Plaintiff must present evidence beyond the letter and her own self-serving assertions to create a genuine issue of material fact that the letter is confusing. *Durkin*, 406 F.3d at 415; *Pettit,* 211 F.3d at 1061-62.

### A.    *Direct communication with Buckley*

The Court turns first to § 1692c, which states "a debt collector may not communicate with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney." 15 U.S.C. § 1692c(a)(2). The statute provides only two exceptions to this: if "the attorney fails to respond within a reasonable period of time" or if "the attorney consents to direct communication with the consumer." *Id.* Once the debt collector receives notice of representation, "the debt collector shall not communicate further with the consumer with respect to such debt "unless it is to advise the consumer that its collection efforts

are being terminated or that it intends to invoke specified remedies.  *Id.* § 1692c(c).  Liability for violating this section is appropriate if the debt collector has actual knowledge of the representation.  *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729-30 (7th Cir. 2004).

The parties agree that Afni received a letter from Steinkamp that he was representing Buckley for all debts.  The parties also agree that Afni directly sent Buckley a collection letter after receiving Steinkamp's representation letter.  Afni does not argue that any exception to the statute applies and so the violation here is undisputed.  Rather, Afni makes two arguments that it was without actual knowledge Buckley was represented by Steinkamp.  For reasons set forth below, Afni's arguments fail.

First, Afni argues it could not associate Buckley's collection accounts with Steinkamp's letter because the letter omitted her account numbers.  This argument fails because the person who does manual account research for Afni testified that customers are identified by social security number and that all of Afni's accounts are associated with social security numbers. [Filing No. 37-4, at ECF p. 8-9.]  Steinkamp's letter provided Buckley's social security number, which could be used to identify her accounts with Afni.  Furthermore, Afni uses an outside database called Accurint to find debtors based on social security number, name, or address. [Filing No. 37-4, at ECF p. 4-6.]  This information was all provided in Steinkamp's letter.  Based on the evidence, Afni had enough information without Benning's account numbers to associate Steinkamp's letter with all of her collection accounts.

Second, Afni argues it could not associate Buckley's collection accounts with Steinkamp's letter because the letter erroneously referred to Buckley as "AKA: Smock."  Smock is Buckley's last name from her first marriage and it is the name associated with Afni's account records.  Afni argues that because Smock is Buckley's former last name, the letter technically

should have read "FKA: Smock."  Afni's argument is overly technical and fails to address the issue of knowledge.  The fundamental question here is whether Afni had actual knowledge that Steinkamp represented Buckley.  While there is certainly a difference between AKA and FKA, the most important piece of these acronyms for purposes here is the "KA."  Was Buckley "known as" Smock to Afni?  Yes.  Thus, pointing out the difference between AKA and FKA does not tend to show Afni lacked actual knowledge that Buckley was represented by counsel.

Even more fatal to Afni's argument are the bankruptcy notices it received.  Afni was sent notice of Buckley's bankruptcy initially and upon discharge.  Buckley's bankruptcy notices showed that she was represented by Steinkamp and gave his address and phone number.  The notice also included Buckley's prior last name of Smock, her address, and social security number.  Afni connected these notices with all of Buckley's collection accounts except the DIRECTV account.  Based on these facts, Afni's argument that it was without actual knowledge that Buckley was represented by counsel is unavailing.

The parties agree that Afni directly sent Buckley a debt collection letter after receiving Steinkamp's representation letter.  Based on the evidence, no rational trier of fact would reasonably find that Afni received insufficient information to be put on notice that Buckley was represented by counsel.  Consequently, Afni had actual knowledge Buckley was represented by counsel and is liable for contacting her directly.  Summary judgment in favor of Buckley is therefore appropriate on this claim.[2]

> B.    *Language in the collection letter that harasses, oppresses, or abuses*

Next, the Court turns to § 1692d, which states "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in

---

[2] As discussed below, the bona fide error exception provides no refuge from this claim.

10

connection with the collection of a debt." 15 U.S.C.A. § 1692d.  This section prohibits harassing or abusive conduct, such as threats of violence, using abusive language, or placing annoying phone calls.  *Chapman v. Ontra, Inc.*, No. 96 C 0019, 1997 WL 321681, at *4 (N.D. Ill. June 6, 1997).

Buckley fails to explain how § 1692d has been violated.  She makes a general argument that Afni's violation stems from its July 2014 collection letter, which alleged that Buckley owed a certain amount to Afni for her DIRECTV account.  It states in part: "We are making another attempt to contact you regarding your overdue account.  In an effort to resolve this matter we will accept $100.  Once paid, our records will reflect the status of your account with Afni, Inc. as closed as [sic] settled." [Filing No. 37-2, at ECF p. 10.]  The language in this letter does not appear intended to harass, oppress, or abuse when compared to other instances of abusive collection letters in this circuit.  In contrast, in *Herbert v. Wexler & Wexler*, No. 95 C 1452, 1995 WL 535107, at *3 (N.D. Ill. Sept. 5, 1995), the collection letter stated: "You cannot even begin to know the trouble and expense that is about to come into your life over this matter as we intend to do whatever is necessary to compel you to pay this obligation."  This was construed as language, the natural consequence of which is to harass, oppress or abuse the debtor.  *Id.*  The collection letter sent to Buckley was appropriately worded, even though the debt it sought to collect was not valid.

The Court is unaware of any case law that would support a conclusion that Afni's collection letter is abusive or harassing simply because it violated another section of the FDCPA.  Accordingly, the Court finds that this letter does not violate § 1692d because there is no evidence of harassing or abusive tone or language.  Summary judgement in favor of Afni is therefore appropriate on this issue.

11

C.    *Falsely representing the legal status of Buckley's debt*

The Court turns next to § 1692e, which prohibits "the false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).  Buckley argues that this prohibited Afni from sending her a collection letter on the DIRECTV account after it was discharged in bankruptcy.  Afni contends that since Buckley knew her DIRECTV debt was discharged in bankruptcy, its single erroneous collection letter did not violate the FDCPA. Interestingly, Afni relies on *Turner v. J.V.D.B. & Associates, Inc.*, 483 F. Supp. 2d 631 (N.D. Ill. 2007), and Buckley relies on *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991 (7th Cir. 2003). These cases are related; Afni's case was the result of an appeal from Buckley's case.

Buckley's case provides the standard.  The test for determining whether there has been a violation is objective, "turning on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner*, 330 F.3d at 995.  "[T]he debt collector's subjective intent or belief is not dispositive." *Id.*  "§ 1692e applies even when a false representation was unintentional."  *Id.* (quoting *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000)).

Afni's case discusses whether an unsophisticated consumer was misled where plaintiff received a collection letter for a debt that was discharged in bankruptcy.  *Turner*, 483 F. Supp. 2d at 635.  The court found that based on the facts, an unsophisticated consumer would not be misled.  *Id.*  The court explained that the plaintiff did not believe the debt remained payable because he testified that he was being "falsely accused" of owing the debt and he understood the letter permitted him to dispute the debt.  *Id.*  Viewing these facts under the objective standard, the plaintiff, an unsophisticated consumer, did not believe that the debt discharged in his bankruptcy was still payable.  *Id.*

12

Applying the unsophisticated consumer standard to the facts here, the Court first looks at Afni's collection letter through Buckley's eyes in a light favorable to Buckley.  Buckley testified that when she received the letter she was upset and mad.  [Filing No. 45-1, at ECF p. 4.]  She testified that she felt "[s]tressed out, because it was stressful when you receive something and you thought it was off your credit report."  [Filing No. 45-1, at ECF p. 4.]  Buckley explained that she talked to her mom and "was freaking out because I didn't know what it was and why I was getting letters still in the mail."  [Filing No. 45-1, at ECF p. 5.]  Buckley stated that although she didn't lose sleep, she felt like crying.  [Filing No. 45-1, at ECF p. 5.]  Buckley testified this was the most stressful thing that has happened to her, except for her kids.  [Filing No. 45-1, at ECF p. 6.]  These facts can support an inference that Buckley was misled.

However, when viewing the facts in a light favorable to Afni, Buckley's reaction seems much less dramatic.  When asked what she did after receiving the collection letter, Buckley stated that she brought it straight to her attorney because she "knew" it was included in her bankruptcy.  [Filing No. 48-2.]  When describing her reaction to receiving the letter, Buckley stated, "I was kind of kind of upset and mad, I guess."  [Filing No. 45-1, at ECF p. 4.]  Buckley described receiving the letter as stressful, but said that she did not lose sleep or cry.  [Filing No. 45-1, at ECF p. 4.]

Based on these facts, it is unclear whether Afni's letter deceived or mislead Buckley.  Afni's primary contention is that Buckley was not misled because she did not lose any sleep or cry and she knew she did not owe the debt.  Case law does not suggest that crying and losing sleep are indicative of being misled.  However, it is unclear whether Buckley knew she did not owe the debt.  The deposition does not indicate whether Buckley received the letter and then called her attorney because she "knew" it was part of her bankruptcy or if she first called her

mother "freaking out."  And unlike the consumer in *Turner*, Buckley did not make obvious

remarks to indicate her knowledge.  Buckley stated she was stressed out because this was a debt

she "thought" she no longer owed.  This is inconsistent with her other statement that she "knew"

it was discharged in bankruptcy.  It is difficult to determine whether Buckley knew, at least

initially, that she did not owe the debt.  The only fact that is clear is that Buckley ultimately took

the letter to her bankruptcy attorney who determined that the letter referred to a discharged debt.

Even though Buckley stated that she knew the debt was discharged, it cannot be

objectively inferred from all the evidence that she was not misled to believe that she needed to

pay the debt Afni was attempting to collect.  She brought the letter to her bankruptcy attorney,

yet showed concern that she owed the debt.  Viewing the evidence in a light favorable to each

party, the Court cannot determine whether Buckley, an unsophisticated consumer, was confused

and misled by Afni's collection letter.  Whether Buckley was mislead by Afni's letter is a

material fact in genuine dispute.  Accordingly, Buckley's claim that Afni violated § 1692e is best

suited for trial.

> **D.**     *Unfair or unconscionable collection means*

Finally, the Court turns to § 1692f, which states that "[a] debt collector may not use

unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  In

particular, this section prohibits "[t]he collection of any amount … [not] expressly authorized by

the agreement creating the debt or permitted by law."  *Id.* § 1692f(1).  A violation depends solely

on two factors: "(1) whether the debt agreement explicitly authorizes the charge; or (2) whether

the charge is permitted by law."  *Turner*, 330 F.3d at 996.  The provision is silent on intent, but

the Seventh Circuit has held that "a collector who collected a charge unauthorized by the debt

agreement or by law, even by accident, would violate § 1692f(1)."  *Id.*

Buckley again makes a general argument that Afni's violation stems from its attempt to collect her discharged debt. Afni does not dispute that it sent the letter, but notably it never collected this debt. And it is difficult for the Court to see how sending a collection letter in the mail would be an "unfair or unconscionable means" of debt collection. Although Afni's letter falsely stated that Buckley had to pay this discharged debt, it does not automatically make Afni liable under § 1692f. *Turner*, 330 F.3d at 997. Buckley does not argue either factor for the Court to consider and the *Turner* court held that a letter providing information about paying a debt "is not an unfair or unconscionable means of debt collection under § 1692f, even when the debt collector may have violated some other provision of the FDCPA." *Id.* Afni's letter set forth the alleged amount of the debt, the name of the creditor and account number, a statement of its discounted payment offer, and Afni's contact information. Essentially, it provided Buckley with the information necessary to verify that this was a debt discharged in her bankruptcy. Consequentially, based on the facts viewed in a light favorable to Buckley, Afni's collection letter was not unfair or unconscionable and no violation of § 1692f has occurred. Summary judgment in favor of Afni is appropriate on this issue.

E. *Bona fide error exception*

Afni argues that, notwithstanding its FDCPA violations, it is entitled to summary judgment under the bona fide error exception. Under this exception, a defendant is not held liable "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To invoke this defense, the defendant has the burden to "show that the violation: (1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures

reasonably adapted to avoid such error." *Ruth v. Triumph P'ships,* 577 F.3d 790, 796 (7th Cir. 2009); *Kort v. Diversified Collection Services, Inc.,* 394 F.3d 530, 537 (7th Cir. 2005). This does not necessitate that "debt collectors ... take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort,* 394 F.3d at 539.

Afni has not demonstrated sufficient evidence to satisfy all three elements and, therefore, is not entitled to summary judgment on this issue as a matter of law. For the first prong, Afni argues it did not intentionally violate the FDCPA because it erroneously believed the DIRECTV debt was valid and that Buckley was unrepresented by counsel. Afni also appears to shift the burden, arguing "[t]here is no evidence that Afni intentionally violated the FDCPA." [Filing No. 45, at ECF p. 12.] Afni's arguments are problematic. As Buckley points out, Afni does not cite to any evidence for its assertion that its error was unintentional, and the burden is squarely on Afni to show that the alleged violations were unintentional. Thus, Afni fails at the first prong.

But even if Afni were successful on the first prong, it omits any argument on the second prong. Afni must show all three elements to succeed on the bona fide error defense. Yet Afni offers no explanation or evidence of what precise error occurred in this case, which is essential in order to successfully argue the third prong. Without identifying the precise error, Afni cannot adequately explain how the policies and procedures it had in place were designed to address that error.

Afni argues the third prong by pointing to its official policies. However, Afni does not explain how the policies apply to the violations at hand. In *Dechert v. Cadle Co.*, No. IP01-880-C(B/G), 2003 WL 23008969, at *4 (S.D. Ind. Sept. 11, 2003), the defendant made general assertions that it has policies in place which attempt to make sure it is in compliance with the FDCPA. The *Dechert* court held that the defendant cannot simply shield itself from liability by

pointing to its policies aimed at obeying the law.  *Id.*  Broad assertions that a defendant tries to comply with the law "can not serve as the type of policies and procedures contemplated by Congress as sufficient to insulate a debt collector from liability."  *Id.*

Afni's arguments are similar to the broad assertions in *Dechert.*  Afni has a policy regarding attorney representation [Filing No. 37-1, at ECF p. 89] and training for employees on compliance with the FDCPA.  [Filing No. 48-1, at ECF p. 3.]  However, as explained above, Afni fails to identify exactly what went wrong with Buckley's DIRECTV account and it fails to identify how its policies were aimed at preventing this error from happening.  The essence of Afni's argument for the bona fide error is that it sought to collect a debt it did not know was included in Buckley's bankruptcy and its policies do not support collection of discharged debts. [Filing No. 48, at ECF p. 2.]  Such an argument is is too general for Afni to succeed on the bona fide error defense.  Therefore, summary judgement in favor of Afni on this issue is not appropriate.

In summary, the evidence viewed in a light favorable to Afni demonstrates that Afni violated § 1692c of the FDCPA because it had actual knowledge that Buckley was represented by counsel when it contacted her directly.  Based on the evidence, no rational trier of fact could reasonably find that Afni was unable to associate Steinkamp's letter with Buckley's accounts. Afni also failed to show all three elements required for the bona fide error defense. Consequently, Afni engaged in abusive collection practices under the FDCPA.  Partial summary judgment in favor of Buckley is therefore appropriate on the § 1692c claim.

The evidence, even when viewed in a light favorable to Buckley, demonstrates that Afni did not violate §§ 1692d or 1692f.  Sending Buckley a collection letter was not an unfair or unconscionable means of debt collection, and the letter was not harassing or abusive in its tone

or language.  Based on the evidence, no rational trier of fact could reasonably find that Afni's

letter was abusive or worded in a way that harassed Buckley. Partial summary judgment in favor

of Afni is thus appropriate for the alleged violations under §§ 1692d and 1692f.

However, the evidence viewed in a light favorable to either party does not demonstrate an

absence of genuine issues of material facts for the alleged § 1692e violation.  It is unclear

whether Afni's collection letter misled Buckley to believe that she needed to pay the DIRECTV

debt.  Whether Buckley was misled is an issue best suited for trial.

**VI.     Conclusion**

For the reasons explained above, the Court grants Buckley's motion for summary

judgment [Filing No. 37] in part and grants Afni's motion for summary judgment [Filing No. 44]

in part, leaving for trial the issue of whether Afni violated § 1692e of the FDCPA.

As for the FCRA claim and the FDCPA § 1692c claim, the amount of damages to which

Buckley is entitled remains unanswered.  No amount of actual damages have been pleaded, so

Buckley must decide whether she is pursuing actual or statutory damages.  Additionally, the

issue of punitive damages must be addressed.  Buckley is also allowed to recover costs and

reasonable attorney's fees, but she has not provided the Court with any of these amounts.

This case remains set for trial on February 22, 2016.  Counsel shall be prepared at the

January 21, 2016, final pretrial conference to discuss resolution of all remaining issues in this

case.

Date:  1/6/2016

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Justin M. Penn
HINSHAW & CULBERTSON, LLP
jpenn@hinshawlaw.com

Michael Anthony Eades
JOHN STEINKAMP AND ASSOCIATES
steinkamplaw@yahoo.com

John Thomas Steinkamp
JOHN T. STEINKAMP AND ASSOCIATES
steinkamplaw@yahoo.com